IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geisinger Health System, and :
Geisinger Clinic, :
            Petitioners :
         :
       v. : No. 1625 C.D. 2015
        : Submitted: January 22, 2016
Bureau of Workers' Compensation :
Fee Review Hearing Office (SWIF), :
           Respondent :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge[1]


OPINION NOT REPORTED


MEMORANDUM OPINION
BY SENIOR JUDGE PELLEGRINI       FILED: April 21, 2016


          Geisinger Health System and Geisinger Clinic (collectively, Provider) petition for review of an order of the Medical Fee Hearing Officer (Hearing Officer) determining that the State Workers' Insurance Fund (Insurer) appropriately reimbursed Provider for treatment and services rendered to Billy Rossman (Claimant) from August 27 through August 30, 2014. The Hearing Officer awarded Provider reimbursement for its treatment and services rendered in its trauma center in the amount of 100% of its usual and customary charges

---

[1] This opinion was reassigned to the authoring judge on February 29, 2016.

determined by reference to a database repricing Provider's charges in accord with other providers' charges for similar treatment and services provided in the same geographic area. Provider contends it is entitled to reimbursement of its actual charges without reference to any repricing database which is used to recalculate its rates based on charges for similar treatment in the geographic region. For the reasons that follow, we affirm.

## I.

The Hearing Officer found the following facts which are not in dispute. In August 2014, Claimant, employed as a butcher, sustained serious injuries when a cow, being euthanized, kicked him in the legs. After Claimant fell, the cow kicked him again in either the head or back. On August 27, 2014, Claimant originally went to Mount Nittany Medical Center where cervical spine imaging showed an unstable C6 fracture. Thereafter, Claimant presented at Provider's emergency department as a trauma transfer. Claimant arrived by ambulance on a long spine board with a cervical collar in place. On arrival, Claimant complained of upper back pain and he may have sustained a loss of consciousness at the time of injury. A CT scan of Claimant's cervical spine indicated a fracture of the posterior arch at C5-C6, with partial subluxation and angulation of C6, as well as an unstable fracture with ligamentous injury. Provider admitted Claimant to trauma surgery. *Id.* On August 29, 2014, Claimant underwent surgery for an anterior cervical discectomy and fusion at C5-C7. On August 30, 2014, Provider discharged Claimant in stable condition with follow-up instructions. There is no dispute that the treatment was at a Level 1 trauma center for life threatening or urgent injuries.

2

In September 2014, Provider submitted three HCFA-1500 (claim) forms to Insurer seeking payment for its physicians' treatment of Claimant. Provider's claim forms included itemized billing charges for treatment rendered to Claimant from August 27 through August 30, 2014. Provider sought full payment for services rendered in a Level I trauma center.

In response, Insurer issued an explanation of benefits (EOB) which recognized that Provider rendered inpatient services at a Level I or II trauma center to a patient with immediately life threatening or urgent injuries. Insurer's EOB further stated: "As such 'usual, customary and reasonable rates for this geographic area have been utilized as the reimbursement methodology.'" (F.F. No. 3) (citation omitted.)

In response to Insurer's EOB, Provider filed applications for fee review under Section 306(f.1) of the Workers' Compensation Act (Act).[2] In December 2014, the Medical Fee Review Section circulated administrative decisions concluding that Insurer owed Provider an additional amount for Claimant's treatment. The Medical Fee Review Section noted that Provider's documentation met the guidelines in Section 127.128 of the Workers' Compensation Medical Cost Containment (MCC) Regulations and determined that Provider was entitled to be reimbursed at 100% of the billed charges.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §531.

Insurer filed a timely request for a hearing. At the hearing, Insurer submitted the deposition testimony of Linda A. Lengle (Repricing Manager), a repricing manager for Hoover Rehabilitation Services. The Hearing Officer found the Repricing Manager's testimony credible in its entirety. In determining Provider's usual and customary charges, the Repricing Manager used a usual and customary charge database. In trauma cases, rather than applying the workers' compensation fee schedule, she applies the usual and customary information at the 85th percentile.

The Hearing Officer reversed the Medical Fee Review Section's determination. She noted that Section 127.3 of the MCC Regulations defines "actual charge" as: "The provider's usual and customary charge for a specific treatment, accommodation, product or service." 34 Pa. Code §127.3. By comparison, she noted that "usual and customary charge" is defined as: "The charge most often made by providers of similar training, experience and licensure for a specific treatment, accommodation, product or service in the geographic area where the treatment, accommodation, product or service is provided." *Id.* The Hearing Officer found Insurer's payment to Provider shall be based on "100% of the usual and customary charge" as defined in 34 Pa. Code §127.3 rather than 100% of Provider's "actual charge." *Id.* The Hearing Officer then determined that Insurer properly reimbursed Provider at 100% of the usual and customary charge for services in that geographic region for the services rendered to Claimant.

In further explaining her decision, the Hearing Officer reasoned:

4

Although Provider is correct that Section 127.128(c) of the [MCC Regulations] references "the provider's usual and customary charge" <u>Section 127.128(a) and (b) of the [MCC Regulations] and Section 306(f.1)(10) of the Act clearly indicate that services rendered in a trauma center shall be paid at the usual and customary rate, not at the provider's usual and customary charge or at the provider's actual charge.</u> The fact that the "usual and customary charge" is cited three times as opposed to the single citation of "the provider's usual and customary charge", as well as the fact that the [MCC Regulations] include a specific definition for "actual charge" and a separate definition for "usual and customary charge," leads the undersigned to conclude that the aim of both the [MCC Regulations] and the Act was to ensure that providers would properly be reimbursed at 100% of the usual and customary charge for the specific treatment rendered in the geographic location where that specific treatment was provided. Indeed, the purpose of the [MCC Regulations] is to prevent providers from charging excessive fees for treatment and services rendered to workers' compensation claimants.

(Hearing Officer's Op., Conclusion of Law No. 8) (emphasis added.)

Citing the Repricing Manager's testimony, the Hearing Officer further reasoned:

Repricing Manager testified on behalf of Insurer that the [Department] specified in its "Statement of Purpose of Adoption of Usual and Customary Charge Reference" that the Department would utilize the 85th percentile of the MDR database to determine the usual and customary charge as defined in Section 127.3 of the [MCC Regulations]. <u>It is therefore consistent and logical to reason that payment for services and treatment at a trauma center would be paid at the theoretically lesser</u>

5

> amount of 100% of the usual and customary charges as opposed to 100% of the actual charges.

*Id.* (emphasis added.)

Accordingly, the Hearing Officer entered an order granting Insurer's fee review contest and holding that Insurer appropriately reimbursed Provider for the treatment and services rendered to Claimant from August 27 through August 30, 2014, and that no additional payment was due. Provider petitions for review.[3]

## II.

Provider contends that it is entitled to be reimbursed for the charges for transport and the full course of acute care at its usual and customary charges, not on a calculation based on other providers' charges for similar treatment and services provided in the same geographic area. Provider cites Section 306(f.1)(10) of the Act, which provides:

> If acute care is provided in an acute care facility to a patient with an immediately life threatening or urgent injury by a Level I or Level II trauma center accredited by the Pennsylvania Trauma Systems Foundation under the act of July 3 1985 (P.L. 164, No. 35), known as the "Emergency Medical Services Act," or to a burn injury patient by a burn facility which meets all the service standards of the American Burn Association, or if basic

---

[3] Our review is limited to determining whether the Hearing Officer's findings are supported by substantial evidence and whether the Hearing Officer erred as a matter of law or violated Employer's constitutional rights. *Roman Catholic Diocese of Allentown v. Bureau of Workers' Comp., Fee Review Hearing Office (Lehigh Valley Health Network)*, 33 A.3d 691 (Pa. Cmwlth. 2011), *appeal denied*, 53 A.3d 759 (Pa. 2012).

or advance life support services, as defined and licensed under the "Emergency Medical Services Act," are provided, the amount of payment <u>shall be the usual and customary charge.</u>

77 P.S. §531(10) (emphasis added.)

Provider also cites Sections 127.128(c) and (d) of the MCC Regulations, which it argues the Hearing Officer impermissibly disregarded. Sections 127.128(c) and (d) provide:

(c) If the patient is initially transported to the trauma center or burn facility in accordance with the American College of Surgeons (ACS) triage guidelines, payment for transportation to the trauma center or burn facility, and payments for the full course of acute care services by all trauma center or burn facility personnel, and all individuals authorized to provide patient care in the trauma center or burn facility, shall be at the <u>provider's usual and customary charge</u> for the treatment and services rendered.

(d) The determination of whether a patient's initial and presenting condition meets the definition of a life-threatening or urgent injury shall be based upon the information available at the time of the initial assessment of the patient. A decision by ambulance personnel that an injury is life threatening or urgent shall be presumptive of the reasonableness and necessity of the transport to a trauma center or burn facility, unless there is clear evidence of violation of the ACS triage guidelines.

34 Pa. Code §§127.128(c), (d) (emphasis added.)

Applying Sections 127.128(c) and (d) here, Provider asserts that Insurer concedes that inpatient services were provided by a Level I or Level II trauma center to a patient with an immediately life threatening or urgent injury. (Hearing Officer Op., F.F. No. 3.) Further, Insurer made no attempt to submit evidence of a violation of the ACS triage guidelines. Consequently, Provider asserts that Insurer failed to overcome the presumption of reasonableness and necessity specified in 34 Pa. Code §127.128(d). As such, Provider argues Insurer is not permitted to reduce Provider's usual and customary charge using any method, including a usual and customary charge *database*.

## III.

This is one of three appeals in which Provider petitions for review of the Hearing Officer's decisions granting Insurer's fee review contests and determining Insurer appropriately reimbursed Provider based on the Repricing Manager's use of a usual and customary charge database. In *Geisinger Health System and Geisinger Clinic v. Bureau of Workers' Compensation Fee Review Hearing Office*, ___ A.3d ___ (Pa. Cmwlth., No. 1627 C.D. 2015, filed April 21, 2016), we addressed the same issues that are before us in this case, and, accordingly, for the same reasons that are set forth in that opinion, we affirm the order of the Hearing Officer in this case.

_____
DAN PELLEGRINI, Senior Judge

Judge Simpson concurs in the result only.

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Geisinger Health System, and : 
Geisinger Clinic, : 
          Petitioners : 
           : 
        v. : No. 1625 C.D. 2015
           : 
Bureau of Workers' Compensation : 
Fee Review Hearing Office (SWIF), : 
         Respondent : 

# **O R D E R**

AND NOW, this 21st day of April, 2016, the order of the Bureau of Workers' Compensation Fee Review Hearing Officer in the above-captioned case is affirmed.

_____
DAN PELLEGRINI, Senior Judge