# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scomed Supply,               :
             Petitioner        :
                                  :
          v.                 :    No. 79 C.D. 2025
                                  :
Hartford Accident & Indemnity    :
Company and Sedgwick Claims     :
Management Services (Bureau of    :
Workers' Compensation Fee Review   :
Hearing Office),                  :
            Respondents    :    Argued: February 3, 2026

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

OPINION BY
JUDGE WOLF                                   FILED: March 16, 2026

Scomed Supply (Scomed) petitions this Court for review of the January 2, 2025 order of Workers' Compensation Fee Review Hearing Officer Colleen Pickens denying Scomed's Requests for Hearing to Contest Fee Review Determination (Hearing Requests). In Scomed's view, Hearing Officer Pickens committed reversible error when she determined that Scomed is not a "health care provider" as defined by Section 109 of the Workers' Compensation Act (Act).[1] Because Hearing Officer Pickens' determination is based on a correct interpretation of the Act and relevant case law, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of July 2, 1993, P.L. 190, 77 P.S. § 29.

# I. Background

At the core of the instant dispute are certain medical goods dispensed to Pedro Velez III (Claimant) by Scomed, a retail seller of medical supplies. Certified Record (C.R.), Item No. 28, Hearing Officer's Decision, Finding of Fact (F.F.) No. 1. The goods dispensed to Claimant include electrodes, batteries, lead wires, moisturizer, and alcohol wipes, all of which are necessary for the use of a transcutaneous electrical nerve stimulation (TENS) unit that had been prescribed by Claimant's physician for the treatment of a work injury. *Id.*, F.F. No. 2. Scomed dispensed the goods on ten occasions between July 21, 2023, and April 21, 2024, and sent an invoice to Hartford Accident & Indemnity Company (Insurer), the insurance provider for Claimant's employer. *Id.*, F.F. Nos. 2-4. After Insurer rendered payment for less than the full amount billed, Scomed filed five Applications for Fee Review in the Bureau of Workers' Compensation's Medical Fee Review Section between October 5, 2023, and May 31, 2024. *Id.*, F.F. No. 4. Citing various reasons not pertinent here, the Medical Fee Review Section found that no payment was due to Scomed beyond the amount already submitted by Insurer. *See* Reproduced Record (R.R.) at 72a-76a.

Dissatisfied by the Medical Fee Review Section's determinations, Scomed filed its five Hearing Requests between October 2023 and February 2024. *See id.* at 159a, 162a, 197a, 201a, 223a. The Hearing Requests were assigned to Hearing Officer Pickens, who held a hearing via videoconference on January 26, 2024. *See* Reproduced Record (R.R.) at 1a. Insurer contended that Scomed lacked recourse to the Medical Fee Review Section because it was not a health care provider or "anything more than a middleman." *Id.* at 9a. Scomed, explained Insurer, did not see patients, did not issue prescriptions, and had no "independent treating ability."

2

*Id.* Offered a chance to respond, Scomed declined. *Id.* at 14a. Hearing Officer Pickens then explained to the parties that the "threshold issue" of whether Scomed is a health care provider would be bifurcated from the subsequent issue of whether additional payment was due. *Id.* at 15a.

At a subsequent hearing on April 19, 2024, Insurer elaborated on its argument that Scomed was not a health care provider under the Act. *Id.* at 35a. In support, Insurer pointed to this Court's holding in *Harburg Medical Sales Company v. PMA Management Corporation* (Pa. Cmwlth., No. 635 C.D. 2020, filed August 30, 2021) (unreported)[2] that Harburg Medical Sales Company (Harburg), a medical supplies distributor, was not a "health care provider" under the Act because it was "neither licensed nor authorized by the Commonwealth to provide health care services." *Id.*, slip op. at 4. Insurer argued that Scomed and Harburg were alike in that they did not treat patients or "do anything other than dispense product." R.R. at 37a. In response, Scomed pledged that it would present "certifications" as evidence in rebuttal to Insurer's argument but declined to specify what those certifications entailed. *Id.* at 38a-39a.

At a third hearing on July 11, 2024, Insurer submitted the following exhibits as evidence:

- Pages from Scomed's website and Facebook page explaining, *inter alia*, that Scomed stocks its "own inventory so that [it] can provide the most commonly prescribed products in a timely manner" and that it "work[s] closely with many manufacturers to provide [prescribing physicians] with a wide selection of products," *id.* at 88a;

---

[2] Unreported opinions of this Court filed after January 15, 2008, may be cited for their persuasive value. Pa.R.A.P. 126(b); 210 Pa. Code § 69.414(a).

- A certification issued by the Commonwealth Department of Health, valid from March 1, 1990, until February 29, 2024, authorizing Scomed "to conduct and maintain a facility in accordance with the Controlled Substance, Drug, Device and Cosmetic Act" (Drug Act),[3] *id.* at 94a;

- A document issued by "The Board of Certification/Accreditation, International," valid through August 2024, attesting that Scomed is an accredited supplier of Durable Medical Equipment, Prosthetics, Orthotics, and Supplies (DMEPOS) for Medicare purposes, *id.* at 97a; and

- A blank Medicare enrollment form listing all available DMEPOS supplier categories, all of which involve goods rather than medical services. *Id.* at 98a-100a.

Insurer argued that the foregoing documents, which were all shared by Scomed's counsel, underscored the "distinction between a health[ ]care provider and a medical supplier" such as Scomed. *Id.* at 57a. Scomed, once again, offered no argument or evidence on its own behalf, but instead requested an additional 14 days to decide how to respond to Insurer's evidence. *Id.* at 58a. Hearing Officer Pickens granted the request, but there is no indication in the record that Scomed availed itself of the opportunity to submit its own evidence. *See* Hearing Officer Decision, F.F. No. 10(d).

In her January 2, 2025 decision, Hearing Officer Pickens denied the Hearing Requests on the ground that "Scomed is not a health[ ]care provider as defined by Section 109[.]" *Id.*, Order. Hearing Officer Pickens explained that *Harburg*, though not binding precedent, was "instructive and persuasive" in this case. *Id*, Discussion at 14. Likening the instant case to *Harburg*, Hearing Officer Pickens noted that

---

[3] Act of April 14, 1972, P.L. 233, *as amended,* 35 P.S. §§ 780–101–780–144.

Scomed lacked any employees who "are licensed or authorized to render health[ ]care services to patients." *Id.* While acknowledging Scomed is distinct from Harburg in that it maintains its own inventory as well as a physical office location, Hearing Officer Pickens found those facts irrelevant to the question of whether Scomed was a health care provider under the Act. *Id.* Similarly, Hearing Officer Pickens found that Scomed's status as a DMEPOS supplier for Medicare purposes had no bearing on that central question. *Id.* at 16. Finally, Hearing Officer Pickens noted this Court's observation in *Harburg* that "some medical supply houses are, somehow, providers under the Act, and have standing to file" hearing requests; however, there was no evidence in this case to suggest that Scomed was among them. *Id.* at 17. This appeal followed.[4]

## II. Issues

On appeal,[5] Scomed argues that a comparison of Section 306(f.1)(5) to the Act's regulations reveals an ambiguity in the definition of "health care provider," and that we should resolve that ambiguity in Scomed's favor. Scomed further argues that Hearing Officer Pickens misapplied this Court's holding in *Harburg*, and that further guidance recently given by our Supreme Court in *Schmidt v. Schmidt, Kirifides and Rassias, PC (Workers' Compensation Appeal Board)*, 333 A.3d 310 (Pa. 2025), militates against affirming the decision below. Finally, Scomed argues that Hearing Officer Pickens' decision contravenes the Act's objectives because it

---

[4] Our review is limited to determining whether a hearing officer's findings are supported by substantial evidence and whether the hearing officer erred as a matter of law or violated a party's constitutional rights. *Roman Cath. Diocese of Allentown v. Bureau of Workers' Comp., Fee Review Hearing Office (Lehigh Valley Health Network)*, 33 A.3d 691, 696 n.5 (Pa. Cmwlth. 2011).

[5] We have reordered some of Scomed's arguments for clarity and ease of disposition.

leaves Scomed and similarly situated suppliers "without recourse to challenge payment disputes."  Scomed's Br. at 17.

### III.  Discussion

Under Section 306(f.1)(5) of the Act, health care providers who have properly submitted bills and who dispute "the amount or timeliness of the payment from the employer or insurer shall file an application for fee review with the department no more than [30] days following notification of a disputed treatment or [90] days following the original billing date of treatment."  77 P.S. § 531(5).  "Health care provider" is defined in Section 109 of the Act as

> any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe or agent of such person acting in the course and scope of employment or agency related to health care services.

*Id.* § 29.  This Court has determined that it is within a Hearing Officer's jurisdiction "to conduct a hearing on whether a person invoking the remedy set forth in Section 306(f.1)(5) is a 'provider' within the meaning of the Act."  *Armour Pharmacy v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Wegmans Food Markets, Inc.)*, 206 A.3d 660, 671 (Pa. Cmwlth. 2019) (*en banc*).

### A.  The Act's Regulations

First, Scomed argues that "the Act defines health[ ]care providers broadly" and that it fits within that broad definition.  Scomed's Br. at 16.  In support, Scomed

6

turns to Section 127.3 of the Act's Medical Cost Containment (MCC) Regulations, which defines "health care provider" as

> [a] person, corporation, facility or institution licensed, or otherwise authorized, by the Commonwealth to provide health care services, including physicians, coordinated care organizations, hospitals, health care facilities, dentists, nurses, optometrists, podiatrists, physical therapists, psychologists, chiropractors, or pharmacists, and officers, employes or agents of the person acting in the course and scope of employment or agency related to health care services.

34 Pa. Code § 127.3. Scomed contrasts this with the definition given at Section 109 of the Act and contends that the resulting "broad" definition of health care provider "can and should be construed to include durable medical equipment." Scomed's Br. at 22.

Scomed's argument is unavailing. While the definitions of "health care provider" in Section 109 of the Act and Section 127.3 of the MCC Regulations are not identical, it may be readily observed that both encompass entities "licensed . . . by the Commonwealth to provide health care services[.]" 77 P.S. § 29; 34 Pa. Code § 127.3. Although the lists that follow in those definitions also differ, both serve to clarify that health care providers are entities that perform *services*;[6] none of the entities listed in either definition concern themselves, as does Scomed, primarily with the sale or distribution of medical *goods*. Furthermore, our Supreme Court has observed that Section 109 defines the term "health care provider . . . plainly and unambiguously." *Schmidt*, 333 A.3d at 323. For this additional reason, we decline to expand that definition in the manner that Scomed requests.

---

[6] A "service" is, according to Black's, "an intangible commodity in the form of human effort, such as labor, skill, or advice." *Service*, BLACK'S LAW DICTIONARY (12th ed. 2024).

7

## B. *Harburg*

Next, Scomed argues that *Harburg* is factually distinguishable from the instant matter because Scomed is a "legitimate" provider of durable medical equipment and is directly involved in patient care. Scomed's Br. at 17. In further support, Scomed also argues that it is distinct from Harburg because of the regulations promulgated by several federal agencies that it must follow in order to be federally recognized as a DMEPOS supplier. *Id.* at 27-28. Finally, Scomed points to several of Hearing Officer Pickens' factual findings, including that Scomed is accredited by the "Board of Certification/Accreditation, International" as a DMEPOS supplier; that Scomed keeps its own inventory and maintains a brick-and-mortar site; and that "Scomed must answer questions and respond to beneficiaries' complaints." Scomed's Br. at 32.

Scomed's arguments are, again, unpersuasive. However impeccable may be the credentials authorizing Scomed to dispense durable medical equipment, they do not change the fact that such equipment comprises goods, rather than services; thus, such credentials do not transform the business dispensing them into a "health care provider" under Section 109. Consequently, there is nothing in Hearing Officer Pickens' factual findings that makes Scomed materially distinguishable from Harburg. As Hearing Officer Pickens observed, Scomed and Harburg are both "middlemen" whose product line includes goods "easily accessible via online vendors such as Amazon and Walmart." Hearing Officer's Decision, Discussion at 17. That Scomed keeps its own inventory or a physical location is of no moment, because the mere advance purchase of goods to be later sold at retail to consumers does not transform Scomed into a health care provider. For these reasons, we agree with Hearing Officer Pickens that *Harburg* is instructive in this case.

8

### C. *Schmidt*

Next, Scomed argues that our Supreme Court's recent decision in *Schmidt* militates in favor of its proposed interpretation of "health care provider." In *Schmidt*, the Court addressed the question of whether "the terms 'medical services' and 'medicines and supplies' as used in Section 306(f.1), 77 P.S. § 531 of the [Act], includes [cannabidiol, or CBD, oil], specifically, as well as dietary supplements, generally, and products that may be purchased without a prescription from a health care provider[.]" 333 A.3d at 317. In support of its argument, Scomed points to the Court's construction of "medicine and supplies" as "a broad-encompassing phrase that includes any item that is part of a health care provider's plan for a work-related injury." Scomed's Br. at 29 (citing *Schmidt*, 333 A.3d at 320).

Once again, we find Scomed's argument unavailing. In *Schmidt*, the Court was primarily concerned with the scope of Section 306(f.1)'s references to "medicines and supplies," a phrase that it held to include "any item that is part of a health care provider's treatment plan." 333 A.3d at 322. The Court only briefly discusses Section 109's definition of "health care provider" to establish that a claimant "is not a 'provider' as that term is plainly and unambiguously defined under the [Act]." *Id.* at 323. Thus, we disagree with Scomed that *Schmidt* gives us any basis to revise our understanding of the term "provider" as it appears in Section 306(f.1)(5), the provision at issue in this case.

### D. Scomed's Public Policy Arguments

Lastly, Scomed contends that cutting it and similar companies out of the Fee Review process "undermines the workers' compensation system and jeopardizes access to necessary medical supplies for injured workers." Scomed's Br. at 17. In light of the "critical role" that such businesses play in the health care system, Scomed

urges this Court to reject Hearing Officer Pickens' decision "and instead ensure that medical supply companies can seek redress through the Fee Review process." *Id.* at 21. Doing so, Scomed argues, "will help maintain the quality and availability of medical supplies and equipment for injured workers, ultimately supporting their recovery and well-being." *Id.*

On this final point, too, we disagree with Scomed. Essentially, Scomed asks us to formulate a definition of Section 306(f.1)(5) not from its plain language but from what Scomed sees as the Act's overall purposes. As the Supreme Court observed in *Schmidt*, however, if "statutory language is clear and unambiguous in setting forth the intent of the General Assembly, then we cannot disregard the letter of the statute under the pretext of pursuing its spirit." 333 A.3d at 318 (internal citations omitted). We therefore decline to take a stand on Scomed's arguments about how the Act could better serve its legislative purposes, as such critiques are properly addressed to the General Assembly, not a judicial body.

### IV. Conclusion

For the foregoing reasons, we affirm Hearing Officer Pickens' decision.

_____
MATTHEW S. WOLF, Judge

Judge Fizzano Cannon did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scomed Supply,             :
           Petitioner      :
            :
         v.             :    No. 79 C.D. 2025
            :
Hartford Accident & Indemnity    :
Company and Sedgwick Claims    :
Management Services (Bureau of    :
Workers' Compensation Fee Review   :
Hearing Office),             :
         Respondents : 

# O R D E R

AND NOW, this 16th day of March 2026, the decision of the Workers' Compensation Fee Review Hearing Office in the above-captioned matter, dated January 2, 2025, is hereby AFFIRMED.

_____
MATTHEW S. WOLF, Judge